UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| CONEXUS CREDIT UNION 2006, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| DOEHLER USA INC., | ) |
| | ) |
| Defendant | ) |

## COMPLAINT

Plaintiff Conexus Credit Union 2006 ("Conexus") hereby brings this Complaint against Defendant Doehler USA Inc. ("Doehler"), respectfully alleging as follows:

### I.   INTRODUCTION

1. This is an action for money had and received, conversion, attorneys' fees, and punitive damages. Conexus is a credit union, and on September 21, 2022, it wired money to Doehler pursuant to the instruction of one of Conexus' clients – Minhas Sask Ventures Inc. ("Minhas"). Doehler knew that Minhas intended to transmit $100,000, but due to a computer keystroke error, Conexus inadvertently wired $1,000,000. The resulting $900,000 overpayment ("Overpayment") was sent with Conexus' funds, not Minhas' funds, and Minhas' accounts were not debited for

1

the $900,000 Overpayment. Conexus promptly informed Doehler of the mistake and demanded that Doehler return the Overpayment, but Doehler has refused to do so. Doehler has no valid basis to retain possession of Conexus' funds. Thus, Conexus brings this action.

## II. PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Conexus Credit Union 2006 is a credit union created and headquartered in Regina, Saskatchewan, Canada. Conexus is a citizen of Canada.

3. Defendant Doehler USA Inc. is a Delaware corporation registered to do business in Georgia with a principal place of business at 400 High Point Road SE, Suite 100; Cartersville, Georgia 30120. It can be served via its registered agent CSC Global at 2 Sun Court, Suite 400; Peachtree Corners, GA 30092.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) Conexus is a citizen of Canada and Doehler is a citizen of Georgia, and (b) the value of the matter in controversy, exclusive of interest and costs, exceeds $75,000.00. Before attorneys' fees or punitive damages, at the very minimum, Doehler owes Conexus $900,000.

5. This Court has personal jurisdiction over Doehler because it is a citizen of Georgia and Doehler resides in this District and has its principal place of business in this District.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because this action is brought in the judicial district in which defendant Doehler resides and where it has its principal place of business.

### III. FACTUAL BACKGROUND

7. As a credit union, Conexus offers products and services similar to a bank. Conexus offers checking and savings accounts, accepts deposits, makes loans, and offers a variety of financial services.

8. One of Conexus' clients is Minhas.

9. On September 19, 2022, Minhas' President Moni Minhas emailed Doehler representative Rene Krebs. A true and accurate copy of that email is attached hereto as Exhibit 1. Therein, Mr. Minhas states: "we will transfer US$100,000 today or tomorrow. Please get your staff to send me back details and I will get this done right away." Exhibit 1, p. 6

10. Later the same day, Doehler's then-CFO Shelly Alicz responded and provided account information for the wiring of the $100,000 payment. Exhibit 1, pp. 4-5.

11. On September 21, 2022, Minhas instructed Conexus to wire $100,000 from Minhas' account with Conexus to a bank account held by Doehler. See e.g. Exhibit 1, p. 4.

12. However, that same day, Conexus initiated a wire transfer (the "Wire") in the amount of $1,000,000 to Doehler.

13. The amount of the Wire – $1,000,000 – was inadvertent and the result of a computer keystroke error by a Conexus representative. Conexus intended to wire only $100,000, pursuant to Minhas' instructions.

14. By sending $1,000,000 to Doehler, Conexus inadvertently overpaid Doehler by $900,000.

15. When Conexus sent the Wire, the first $100,000 was sent with Minhas' funds. However, the Overpayment was sent with Conexus' funds and was not debited from Minhas' account.

16. Conexus does not owe any debt to Doehler and, for that reason, the Overpayment could not have been credited against any such debt.

17. On September 22, 2022, after realizing that the Wire was issued in the wrong amount, Conexus representative Natasha Chau called Ms. Alicz by telephone and left a voicemail for her explaining that the Overpayment was inadvertently sent.

18. On September 22, 2022, Ms. Chau emailed Ms. Alicz. A true and accurate copy of Ms. Chau's email is included within Exhibit 1. In the email, Ms. Chau states: "There was an error and that instead of the $100,000.00 USD that I had indicated on our wire request, $1,000,000.00 USD was deposited to your

account. We had tried to recall it but it has since been deposited. I apologize for the error. We are going to need your bank to wire those funds back to us and then we will resend the wire out to you." Exhibit 1, p. 3.

19. On September 23, 2022, Ms. Alicz responded to Ms. Chau. A true and accurate copy of Ms. Alicz's email to Ms. Chau is included within Exhibit 1. In the email, Ms. Alicz states that due to an "amount owed to Doehler from Minhas, we are able to wire back to you the overpayment value of $50,754.38." Exhibit 1, p. 2.

20. Also on September 23, 2022, Conexus Chief Risk and Compliance Officer Maggie Sinclair emailed Ms. Alicz regarding the Overpayment. A true and accurate copy of Ms. Sinclair's email to Ms. Alicz is attached hereto as Exhibit 2.

21. In Ms. Sinclair's email to Ms. Alicz, Ms. Sinclair states:

Minhas Sask. Ventures Inc. instructed our financial institution to wire $100,000USD to Doehler USA Inc, account #[REDACTED]. We completed the authorized transaction of $100,000USD from their bank account as per instructions, however while keying the wire payment our internal team made a keying error and in turn forwarded $1,000,000 USD to you in error, leaving our internal accounts in an unauthorized deficit.

We are looking to connect with you to make arrangements to return the difference of $900,000USD which we are now in deficit as a result of our employee error.

While I appreciate this was an error by our employee, I am hoping that with the acknowledgement of this, your company will look to assist us in correcting by returning the unauthorized payment.

> I will also reach out to speak to you directly in hope to resolve this matter relatively quickly and without the need for any additional parties involved.

Exhibit 2, p. 2.

22. On September 26, 2022, Ms. Alicz responded that because an "overdue balance" was "owed to Doehler by Minhas, we are unable to wire the funds back." Exhibit 2, p. 1.

23. Ms. Alicz offered no justification as to why Doehler could keep Conexus' funds based on a debt purportedly owed by Minhas.

24. On December 9, 2022, undersigned counsel for Conexus wrote to Doehler's President Paul Graham to demand the return of the Overpayment. A true and accurate copy of the correspondence ("Demand Letter") is attached hereto as Exhibit 3.

25. In the Demand Letter, undersigned counsel states that Conexus "intended to wire $100,000 to Doehler" but "as a result of a computer keystroke error, Conexus inadvertently sent $1,000,000…" Exhibit 3, p. 1.

26. Undersigned counsel further explains in the Demand Letter that the "Overpayment was sent with funds belonging to Conexus, not Minhas, to which Doehler has no legal right." Exhibit 3, p. 2.

27. In the Demand Letter, Conexus demands the "return of the $900,000 Overpayment inadvertently sent to Doehler" by December 21, 2022. Exhibit 3, p. 2.

28. On January 12, 2023, Mr. Graham responded to the Demand Letter via email (the "Response Email"). A true and accurate copy of the Response Email is attached hereto as Exhibit 4.

29. Mr. Graham sent the Response Email 22 days after the deadline for a response set forth in the Demand Letter, which was December 21, 2022.

30. In the Response Email, Mr. Graham states that Doehler is refusing to return Conexus' funds as it "continue[s] to hold the position expressed in Shelly Alicz's e-mail…"

31. All conditions precedent to bringing this action have been satisfied or waived.

## COUNT ONE – MONEY HAD AND RECEIVED

32. The allegations contained in paragraphs 1 through 31 are re-alleged and incorporated by reference as if fully set forth herein.

33. Doehler is in possession of the Overpayment but in equity and good conscience it should not be permitted to keep it.

34. Prior to the transmission of the Wire, Minhas emailed Doehler that it intended to send $100,000. Thus, Doehler knew that Minhas had authorized a $100,000 payment and Doehler knew to expect a wire of $100,000.

35. Conexus sent the $1,000,000 Wire solely as a result of a keystroke error. Conexus intended to send $100,000.

36. Conexus promptly informed Doehler of the inadvertent Overpayment.

37. Conexus demanded return of the Overpayment on September 22, 2022.

38. Doehler refused Conexus' September 22, 2022 demand for return of the Overpayment.

39. Conexus demanded return of the Overpayment on September 23, 2022.

40. Doehler refused Conexus' September 23, 2022 demand for return of the Overpayment.

41. Conexus demanded return of the Overpayment on December 9, 2022.

42. Doehler refused Conexus' December 9, 2022 demand for return of the Overpayment.

43. Doehler has unjustly enriched itself at the expense of Conexus by refusing to return the Overpayment.

44. Conexus owes no debt to Doehler to which the Overpayment could be credited.

45. Conexus is entitled to damages in the amount of $900,000 for Doehler's refusal to return the Overpayment.

46. Conexus is entitled to restitution in the amount of $900,000 for Doehler's refusal to return the Overpayment.

## COUNT TWO – CONVERSION

47. The allegations contained in paragraphs 1 through 31 are re-alleged and incorporated by reference as if fully set forth herein.

48. Doehler is in possession of the Overpayment.

49. The Overpayment was sent with Conexus' funds. The Overpayment money belongs to Conexus.

50. The Overpayment was not debited from a Minhas account.

51. Prior to the transmission of the Wire, Minhas emailed Doehler that it would be sending $100,000 and requested instructions on where to send that money, and Doehler responded with wire instructions to receive the $100,000 payment. Thus, Doehler knew that Minhas had authorized a $100,000 payment and Doehler knew to expect a wire of only $100,000.

52. Conexus sent the $1,000,000 Wire solely as a result of a keystroke error. Conexus intended to send $100,000.

53. Conexus promptly informed Doehler of the inadvertent Overpayment.

54. Conexus demanded return of the Overpayment on September 22, 2022.

55. Doehler refused Conexus' September 22, 2022 demand for return of the Overpayment.

56. Conexus demanded return of the Overpayment on September 23, 2022.

57. Doehler refused Conexus' September 23, 2022 demand for return of the Overpayment.

58. Conexus demanded return of the Overpayment on December 9, 2022.

59. Doehler refused Conexus' December 9, 2022 demand for return of the Overpayment.

60. Doehler converted the Overpayment funds.

61. As a result of Doehler's acts and omissions, Conexus is entitled to damages in an amount of at least $900,000.

## COUNT THREE – ATTORNEYS' FEES

62. The allegations contained in paragraphs 1 through 31 are re-alleged and incorporated by reference as if fully set forth herein.

63. Doehler's actions as described above reflect that Doehler has acted in bad faith, has been stubbornly litigious, and has caused Conexus unnecessary trouble and expenses.

64. Without limitation, Doehler has acted in bad faith, has been stubbornly litigious, and has caused Conexus unnecessary trouble and expense because (a) Doehler knew it was to receive a wire of only $100,000; (b) when Doehler received the Wire of $1,000,000, Conexus promptly informed Doehler that the transfer was the result of a computer keystroke error; (c) Doehler refused multiple requests to return the Overpayment; and (d) Conexus informed Doehler that the Overpayment was sent with Conexus' funds – not Minhas' funds, Doehler has no legal basis to keep Conexus' money, and Doehler has still refused to return the Overpayment.

65. As a result of these actions, Conexus is entitled to an award of attorneys' fees pursuant to O.C.G.A. § 13-6-11 against Doehler in an amount to be proven at trial.

## COUNT FOUR – PUNITIVE DAMAGES

66. The allegations contained in paragraphs 1 through 31 are re-alleged and incorporated by reference as if fully set forth herein.

67. Doehler's conduct was intentional and shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, thereby justifying the imposition of punitive damages against Doehler.

68. Without limitation, Doehler's intentional and willful misconduct is evident because (a) Doehler knew it was to receive a wire of only $100,000; (b) when Doehler received the Wire of $1,000,000, Conexus promptly informed Doehler that the transfer was the result of a computer keystroke error; (c) Doehler refused multiple requests to return the Overpayment; and (d) Conexus informed Doehler that the Overpayment was sent with Conexus' funds – not Minhas' funds, Doehler has no legal basis to keep Conexus' money, and Doehler has still refused to return the Overpayment.

69. Based on Doehler's acts and omissions, Conexus is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined by the enlightened conscience of a jury so as to penalize, punish, or deter Doehler from repeating such conduct.

WHEREFORE, Plaintiff Conexus Credit Union 2006 prays as follows:

a. That the Court empanel a jury to hear the claims set forth in this Complaint;

b. That judgment be entered for Conexus and against Doehler and that Conexus be awarded damages for Doehler's failure to return the Overpayment;

c. That judgment be entered for Conexus and against Doehler and that Conexus be awarded damages for Doehler's conversion of the Overpayment funds;

d. That Conexus be awarded its reasonable attorneys' fees and expenses incurred as a result of Doehler's conduct pursuant to O.C.G.A. § 13-6-11;

e. That Conexus be awarded punitive damages as a result of Doehler's willful and wanton misconduct;

f. That Conexus recover its costs in filing this action; and

g. That Conexus be awarded all other relief to which it is entitled.

This 7th day of February, 2023.

**MORRIS, MANNING & MARTIN, LLP**

*/s/ Seslee S. Smith*
Seslee S. Smith
Georgia Bar No. 663377
sss@mmmlaw.com
Ryan C. Burke
Georgia Bar No. 336130
rburke@mmmlaw.com
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
Tel: (404) 233-7000
Fax: (404) 365-9532

*Attorneys for Conexus Credit Union 2006*

15645201 v1